SCHOOL DISTRICT NO. 101 v. CARY OAKS, *Treasurer, &c.*

1. EVIDENCE; ISSUE; *Testimony, When Excluded.* Where the main and principal question in a case is, whether a certain supposed school district was ever legally organized, and the plaintiff, for the purpose of showing that it was so organized, offers to introduce in evidence all the proceedings of the county commissioners, of the county superintendent of public instruction, and all papers connected with the supposed formation, creation, and organization of such school district, and these proceedings and papers taken together do not show that said school district was ever legally formed, created, or organized, and the court for that reason excludes the evidence, *held,* no error committed.

2. ———— The evidence with reference to the supposed organization of said school district, discussed in the opinion, and its immateriality shown.

*Error from Montgomery District Court.*

ACTION, brought in the name of *School District No. 101,* as plaintiff, against *Cary Oaks,* county treasurer, and *School District No. 2.* Trial at March Term 1877, of the district court. A temporary injunction which had been previously granted, was dissolved, and judgment was given in favor of defendants for costs. The plaintiff brings the case here.

*Hill & Broadhead,* for plaintiff.

*Daniel Grass,* for defendants.

The opinion of the court was delivered by

VALENTINE, J.: The principal question supposed to be involved in this case is, whether a certain supposed school district called "School District No. 101, of Montgomery county," has any legal or valid existence. The plaintiff claims that it has, while the defendants say that it has not, and deny that it ever had any existence as a school district, either in law or in fact. Other questions are also involved in this case, and the case might be disposed of in this court upon some of the other questions without deciding this supposed main or principal question. The territory out of which it is claimed that said School District No. 101 was organized,

(except 500 acres thereof,) belonged at the time of such sup-posed organization to School District No. 2 of Montgomery county; and the defendants claim that it still belongs to said School District No. 2. This action was commenced by said School District No. 101, to enjoin the county treasurer of Montgomery county from paying to said School District No. 2 any moneys collected as taxes for school-district purposes from said disputed territory. Whether such treasurer has or is likely to have any such money, we cannot tell; for there is nothing in the record of this case, except the allegations of the plaintiff's petition, which shows anything concerning the matter, and these allegations were denied by the defend-ants in an answer verified by affidavit. It would seem from the record that about all that the plaintiff desired to do on the trial of this case was, to prove that it was a legally-organized school district. And it would seem that it sup-posed that if it proved that fact, that everything else would necessarily follow. But even in the proof of this fact, we think the plaintiff failed. We shall consider all the legal evidence introduced or offered to be introduced by the plain-tiff, whether it was received by the court below or not. And taking all of this evidence, did it show *prima facie* a legal organization of said School District No. 101? We think not. First, it did not show that the county superintendent of pub-lic instruction ever created or attempted to create said School District No. 101, but on the contrary it showed that he actu-ally refused so to do. Second, it did not show that there was ever any legal appeal taken from such refusal of the county superintendent to the county commissioners; and probably no such legal appeal was ever in fact taken. Third, it did not show that said county commissioners ever legally created said school district. Under the statutes the county superin-tendent alone has original jurisdiction to create new school districts, or to change old ones, but an appeal may be taken from him to the county commissioners. (Laws of 1876, pp. 245, 246, §§ 13, 3, 4, 5.) But where the county superintend-ent refuses to create a new district, and the county commis-

sioners on appeal reverse his decision, what should then be done, is not defined by the statutes. Whether the county commissioners themselves should then make the order creating the new district, or should remand the matter back to the county superintendent for him to do so, is not prescribed by the statutes. Probably the latter course would be the better practice. It makes no difference however in this case, as we think, which course should be adopted; for in this case it was not sufficiently shown that either the county superintendent or the county commissioners ever made any valid order creating said School District No. 101.

The plaintiff offered to introduce in evidence all the proceedings of the county superintendent, and all the proceedings of the county commissioners, and all papers connected with such proceedings, and with the supposed formation, creation, and organization of said School District No. 101. But the court below, on the objection of the defendants, excluded such evidence. Was this error? If said evidence showed *prima facie* a valid organization of said School District No. 101, it was error; but if not, then it was not error. Among this evidence was a paper marked "K," purporting to be a petition of "qualified voters of Montgomery county," asking the county superintendent to create a new school district, defining its boundaries by sections, township, and range, but not otherwise. Upon this petition were the following indorsements:

"*Independence, Kansas, April 4th, 1876.*—The undersigned refuses to take any action on this petition.

"B. R. CUNNINGHAM, *Co. Superintendent.*"

"The within petition is granted this 11th day of April 1876.        THOMAS R. PITTMAN, *Chairman Board, &c.*"

"*Independence, Kansas, Oct. 3d, 1876.*—The county commissioners having heard evidence, and the argument of counsel, upon the within petition, are of the opinion that their first action in April last making division of said district was taken without full knowledge of the facts and of the law, and hereby reverse their order of that date.

"THOS. R. PITTMAN, *Chairman.*"

Also among said evidence was the following from the county commissioners' records, to-wit:

"*April 4th, 1876.*—The petitions of school districts in Louisburg and Cherokee townships, for division, were discussed, and action thereon deferred till the first Tuesday in June, and the county clerk instructed to notify all the district officers concerned of the time of meeting. Reconsidered in Cherokee township, and division made according to the petition. District No. —."

The defendants objected to this record being introduced in evidence, "for the reason that the territory described in the petition marked 'K,' is in *Parker* township, and not in Cherokee township; and second, because said record is irrelevant, incompetent, and immaterial testimony at this stage of the proceedings," which objection was by the court sustained. Also among said evidence was a paper purporting to be a notice from the county superintendent to the voters of School District No. 101, notifying them "that the board of commissioners of said county has formed a school district to be known as School District No. 101, county of Montgomery, state of Kansas," etc. But there was no evidence showing that this notice was ever used in any manner in forming or organizing said School District No. 101.

The foregoing is all the evidence, that can be called legal evidence, tending to show what the county superintendent, or the county commissioners, did with reference to the creation or formation of said School District No. 101. That the county superintendent did not form, create, or organize said school district, is certain; and there was really no legal evidence tending to show that any valid appeal was ever taken from the county superintendent to the county commissioners. But even if such appeal had been taken, still there was no sufficient evidence that the county commissioners ever formed, created, or organized said School District No. 101. But as it does not appear that any valid appeal was ever taken to the county commissioners, it therefore does not appear that even what the county commissioners did with reference to this matter was within the scope of their jurisdiction. There

is no claim·that the plaintiff had any other or additional evi- ·
dence than that offered in the court below to prove that said
school district was legally formed, created, or organized. The
plaintiff's evidence also showed that certain persons met in·
said supposed school district, and elected officers, and went
through with all the forms of organizing a school district.
But it is not claimed that these persons or officers ever got
such possession of the disputed territory, or were ever so
recognized by the inhabitants and voters thereof, or by
School District No. 2, or by the county officers of Mont-
gomery county, as to become a school district *de facto*, pro-
vided it was not a school district *de jure*. Under the showing
made in this case we would think that said disputed territory,
and the inhabitants thereof, still form a part of said School
District No. 2.

The judgment will be affirmed.

All the Justices concurring.